## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JERRY DEWAYNE NETTLES, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **MONROE COUNTY, ALABAMA;** | ) | |
| **THOMAS BOATWRIGHT, Sheriff of Monroe** | ) | |
| **County, Alabama, in his individual capacity** | ) | |
| **DEPUTY KENDALL R. GARDNER, in his** | ) | |
| **Individual capacity; DEPUTY STEVEN D.** | ) | |
| **LASSITER, in his individual capacity;** | ) | |
| **JOHN DOE DEPUTIES 1-10; AND** | ) | |
| **JOHN DOE CORRECTIONAL OFFICERS** | ) | |
| **1-10; AND JOHN DOE SUPERVISORS 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

1.      This is an action for deprivation of civil rights under the Civil Rights Act, pursuant to 42 U.S.C. § 1983, and under Alabama law for the assault, battery, unlawful detention, false criminal accusation, and physical abuse of a handcuffed detainee inside the Monroe County Jail. Plaintiff Jerry Dewayne Nettles, Jr. brings this civil-rights action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the State of Alabama.

2.      This action arises from the brutal and unjustified manhandling of Mr. Nettles inside a secure jail booking room after he had already been detained, transported, fully handcuffed with his hands behind his back, surrounded, and placed under the complete control of Monroe County

law-enforcement and jail personnel. This was not a dangerous street encounter, a rapidly evolving roadside struggle, or a split-second judgment made in the uncertainty of the field. This happened inside the jail, in a controlled booking area, with multiple officers present and security camera(s) recording the encounter. Mr. Nettles was not armed, was not free, was not attacking anyone, and was not shown doing anything that justified the level of force used against him.

3.      The video evidence captures what the officers' paperwork attempts to obscure. It shows one or more of Defendant Gardner, Defendant Lassiter, John Doe Deputies 1-10, and/or John Doe Correctional Officers/Jailers 1-10 physically overpowering, choking, lifting, pulling, shoving, and manhandling Mr. Nettles while he was fully handcuffed with his hands behind his back and while multiple officers had already secured physical control over him. The video does not show Mr. Nettles intentionally destroying a computer monitor and desk chair, as later alleged in criminal paperwork. It does not show Mr. Nettles engaging in conduct that justified choking him. It does not show Mr. Nettles posing a threat that justified lifting him while force was being applied to his neck and throat area. It shows the opposite: a fully handcuffed man being treated as though his helplessness gave officers permission to do more.

4.      After the force was used, Defendant Lassiter, Defendant Gardner, and/or other John Doe reporting officers caused or allowed criminal paperwork to be generated accusing Mr. Nettles of Criminal Mischief 3rd[1] based on the alleged intentional destruction of a computer monitor and desk chair. That accusation was false, materially misleading, and contradicted by the objective video evidence. It was also inconsistent with the officers' own narrative, which described different

---

[1]Alabama law provides that a person commits Criminal Mischief in the Third Degree if, with intent to damage property and having no right to do so or any reasonable ground to believe that he or she has such a right, he or she inflicts damage to property in an amount not exceeding five hundred dollars ($500.00). Ala. Code § 13A-7-23(a).

property and a different sequence of events. Those inconsistencies are not incidental. They go directly to the justification Defendants attempted to create after the fact.

5.      This is not a case that depends only on Mr. Nettles's word against the officers' word. The booking-room video exists. The video strips away the usual excuses. It shows that Mr. Nettles was fully handcuffed with his hands behind his back, controlled, and not doing what Defendant Lassiter, Defendant Gardner, and/or the John Doe reporting officers later accused him of doing. These officers nevertheless chose to portray Mr. Nettles as the aggressor and themselves as the victims, converting officer misconduct into detainee misconduct through false, incomplete, and materially misleading paperwork.

## JURISDICTION

6.      This Court has jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367. The Court has original jurisdiction over Plaintiff's federal constitutional claims brought under 42 U.S.C. § 1983 and supplemental jurisdiction over Plaintiff's related state-law claims. The events giving rise to this lawsuit occurred in Monroe County, Alabama, which is located within the Southern District of Alabama, Southern Division. Thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

7.      At all times material to Plaintiff's claims, the individual Defendants were state actors acting under color of state law. They acted with the power, authority, equipment, uniforms, training, access, physical control, and institutional authority of the Monroe County Sheriff's Office, the Monroe County Jail, and/or Monroe County law enforcement operations.

8.      Plaintiff has satisfied all conditions precedent to bringing state-law claims to the extent required by Alabama law. Plaintiff submitted a sworn Affidavit of Claim seeking damages in excess of $200,000.00 for constitutional violations, excessive force, negligence, wantonness,

and related conduct arising from the events beginning on or about June 29, 2025 and ending on or about July 1, 2025, which have caused ongoing damages that did not end when the initial period of confinement ended.

<u>**STATEMENT OF THE PARTIES**</u>

9. Plaintiff, Jerry Dewayne Nettles, Jr. is an individual over the age of nineteen (19) years and a citizen of the United States. At all times relevant to this Complaint, Mr. Nettles was a pretrial detainee and/or arrestee who had been seized, restrained, transported, and placed within the custody and control of Monroe County law-enforcement personnel. Mr. Nettles brings claims for compensatory and punitive damages, attorney's fees, costs, and all other relief available under 42 U.S.C. §§ 1983 and 1988 and Alabama law.

10. Defendant Monroe County, Alabama is a county organized under the laws of the State of Alabama. Plaintiff names Monroe County to the extent discovery establishes that Monroe County, the Monroe County Sheriff's Office, and/or the Monroe County Jail were legally responsible for the physical jail facility, funding, staffing, video systems, preservation of records, maintenance of jail premises, county policies, county customs, county practices, or other acts or omissions that caused or contributed to Plaintiff's injuries and damages. Plaintiff further names Monroe County to the extent Alabama law imposes responsibility for payment, indemnity, statutory damages, or other relief arising from the acts and omissions described in this Complaint.

11. Defendant Thomas Boatwright is an individual over the age of nineteen (19) years and, at all relevant times, served as Sheriff of Monroe County, Alabama. Sheriff Boatwright was responsible for the operation, supervision, command, control, training, discipline, and oversight of deputies, jailers, correctional officers, supervisors, and other law-enforcement personnel operating under the authority of the Monroe County Sheriff's Office and Monroe County Jail. Sheriff

Boatwright was responsible for ensuring that officers under his command did not use excessive force against restrained detainees, did not tolerate unconstitutional booking-room practices, did not fail to intervene when other officers used unlawful force, and did not create or approve false or misleading paperwork to justify officer misconduct. Sheriff Boatwright is sued in his individual capacity.

12.     Defendant Deputy Kendall R. Gardner is an individual over the age of nineteen (19) years and, at all relevant times, was employed as a deputy, law-enforcement officer, and/or jail-affiliated officer acting under color of state law. Deputy Gardner participated in, witnessed, supervised, failed to prevent, failed to intervene in, failed to report, failed to correct, or otherwise caused or contributed to the events made the basis of this lawsuit. Deputy Gardner is sued in his individual capacity.

13.     Defendant Deputy Steven D. Lassiter is an individual over the age of nineteen (19) years and, at all relevant times, was employed as a deputy, law-enforcement officer, and/or jail-affiliated officer acting under color of state law. Deputy Lassiter participated in, witnessed, supervised, failed to prevent, failed to intervene in, failed to report, failed to correct, authored paperwork concerning, supplied information for paperwork concerning, or otherwise caused or contributed to the events made the basis of this lawsuit. Deputy Lassiter is sued in his individual capacity.

14.     Defendant John Doe Deputies 1–10 are individuals whose names and identities are presently unknown to Plaintiff and who, at all relevant times, were employed as deputies or law-enforcement officers acting under color of state law. These Defendants were present for, participated in, assisted with, failed to intervene in, failed to report, failed to correct, or otherwise

5

caused or contributed to the use of force against Mr. Nettles and/or the false and misleading criminal accusations made against him. These Defendants are sued in their individual capacities.

15. Defendant John Doe Correctional Officers/Jailers 1–10 are individuals whose names and identities are presently unknown to Plaintiff and who, at all relevant times, were employed as correctional officers, jailers, booking officers, detention officers, or other jail personnel acting under color of state law. These Defendants were present in the booking area, had custody and control over Mr. Nettles, personally observed or participated in the use of force against him, failed to intervene to stop it, failed to secure medical care, failed to truthfully document the incident, or failed to correct false and misleading official accounts of the incident. These Defendants are sued in their individual capacities.

16. Defendant John Doe Supervisors 1–10 are individuals whose names and identities are presently unknown to Plaintiff and who, at all relevant times, were employed as supervisors, sergeants, lieutenants, shift commanders, jail administrators, or other supervisory personnel acting under color of state law. These Defendants were responsible for supervising deputies, jailers, correctional officers, and booking-room personnel; reviewing use-of-force incidents; ensuring truthful reporting; preserving video evidence; ensuring medical care; preventing retaliation and cover-up; and correcting unconstitutional practices. These Defendants are sued in their individual capacities.

17. At the time of the filing of this Complaint, Plaintiff is unaware of the full names and identities of all individual officers who participated in, witnessed, failed to intervene in, approved, ratified, concealed, or failed to correct the unconstitutional conduct alleged herein. Plaintiff intends to promptly amend this Complaint to add the respective full names of these individuals upon identification through discovery, including but not limited to jail video, body-

camera footage, dash-camera footage, booking records, shift rosters, use-of-force reports, jail logs, criminal case records, internal reports, disciplinary records, and personnel files. For purposes of this Complaint, "Force Defendants" refers to Defendant Gardner, Defendant Lassiter, John Doe Deputies 1-10, and/or John Doe Correctional Officers/Jailers 1-10 who used physical force against Mr. Nettles. "Present-Officer Defendants" refers to the officers who were present during the force and failed to stop it. "Reporting Defendants" refers to the officers and supervisors who authored, supplied information for, approved, adopted, ratified, or failed to correct false or materially misleading paperwork. "Supervisory Defendants" refers to Defendant Boatwright and John Doe Supervisors 1-10.

## STATEMENT OF THE FACTS

**A.     Mr. Nettles was brought into a secure jail booking room fully handcuffed with his hands behind his back and under officer control.**

18.     On or about June 29, 2025, Mr. Nettles was detained by Monroe County Sheriff's Office personnel, including, upon information and belief, Defendant Gardner, Defendant Lassiter, and/or John Doe Deputies, and transported to the Monroe County Jail. According to the officer narrative, Mr. Nettles was handcuffed, searched, placed in a patrol car, and transported to the jail without incident. Thus, by the officers' own account, the encounter had already moved beyond the roadside. Mr. Nettles had already been physically secured. He had already been placed in custody. He had already been transported to a locked governmental facility. The officers had control over his body, his movements, his location, and his freedom.

19.     Once Mr. Nettles arrived inside the Monroe County Jail booking area, the justification for any substantial use of force was even weaker. He was inside a secure law-enforcement facility, fully handcuffed with his hands behind his back, surrounded by multiple officers, and under the immediate physical control of jail and sheriff's-office personnel. The

booking room was not an uncontrolled public space. It was Defendants' own facility, staffed by Defendants' own personnel, monitored by Defendants' own cameras, and governed by Defendants' own rules. If the Force Defendants and Present-Officer Defendants could not safely process a fully handcuffed detainee under those circumstances without choking and manhandling him, the problem was not Mr. Nettles. The problem was their conduct.

20. Jail surveillance video shows Mr. Nettles in the booking area fully handcuffed with his hands behind his back and surrounded by officers. He is not shown moving freely through the room destroying property. He is not shown attacking officers. He is not shown doing anything that would justify the gratuitous force used against him. Instead, the video shows the Force Defendants closing in on him, physically controlling him, and using escalating force while he was fully handcuffed and unable to meaningfully protect himself.

21. At all relevant times inside the booking room, Mr. Nettles was fully handcuffed with his hands behind his back, physically controlled, surrounded, subdued, or otherwise under the officers' control. The officers had the advantage of numbers, size, position, training, equipment, and institutional authority. Mr. Nettles had none of those things. He had no weapon, no ability to leave, no ability to safely disengage, and no realistic ability to protect himself once the Force Defendants began placing force on and around his neck and body.

**B.      The Force Defendants used force that the video evidence shows was unnecessary, excessive, and punitive.**

22. The jail video shows one or more Force Defendants placing hands, arms, and/or body weight around Mr. Nettles's neck and throat area while he was fully handcuffed with his hands behind his back. The video further shows the Force Defendants lifting, pulling, shoving, and physically overpowering Mr. Nettles while he was handcuffed behind his back and unable to

protect himself. The force was not used in response to an actual immediate threat. It was not necessary to prevent escape. It was not necessary to protect another detainee. It was not necessary to protect officers from serious harm. It was gratuitous force used against a fully handcuffed detainee in a controlled jail setting.

23. The force used by the Force Defendants against Mr. Nettles was especially dangerous because it involved pressure to his neck and throat area while his hands were cuffed behind his back. Any reasonable officer knows that applying force to a handcuffed person's neck or throat creates an obvious risk of serious injury, suffocation, loss of consciousness, or death. Any reasonable officer knows that lifting or moving a detainee while force is being applied to the neck or throat magnifies that danger. And any reasonable officer knows that choking a handcuffed detainee inside a booking room is not a lawful substitute for patience, de-escalation, proper restraint technique, or basic constitutional restraint.

24. Mr. Nettles was not merely escorted. He was manhandled. He was not merely restrained. He was fully handcuffed with his hands behind his back and assaulted. He was not controlled because he posed a genuine immediate threat that required the use of neck force. He was overpowered because officers chose domination over lawful restraint. The video evidence shows a detainee who had already been seized and controlled being subjected to additional force that served no legitimate law-enforcement purpose.

25. To the extent any Defendant contends that Mr. Nettles was impaired, confused, verbally noncompliant, slow to follow instructions, unsteady, intoxicated, frightened, resistant, or difficult to process, none of those circumstances justified choking him, lifting him while he was being choked, or physically assaulting him while he was fully handcuffed with his hands behind his back and surrounded. Jail officers are trained to encounter intoxicated, confused, impaired,

frightened, and noncompliant detainees. Those conditions do not suspend the Constitution. They make careful handling more important, not less.

26. The Force Defendants' use of force was not a good-faith effort to maintain or restore discipline. It was excessive, punitive, objectively unreasonable, and malicious. The Force Defendants did not use the minimum force reasonably necessary to secure Mr. Nettles. They used force after control had already been achieved. They used force in a manner that punished Mr. Nettles for being in their custody and for failing to submit in the precise manner they demanded.

27. The Present-Officer Defendants were present and had a realistic opportunity to intervene. They could see what was happening. They could see Mr. Nettles was fully handcuffed with his hands behind his back and outnumbered. They could see the Force Defendants applying force to his body. They could see the danger created by the force being used near his neck and throat. They could have ordered the force to stop, pulled officers away, repositioned Mr. Nettles safely, used proper restraint techniques, summoned medical care, or called a supervisor. Instead, they either participated, assisted, enabled, held Mr. Nettles in place while force was applied, blocked his ability to protect himself, or stood by while the abuse continued.

28. Officers who stand by while a fully handcuffed detainee is choked and assaulted are not neutral witnesses. They are participants in the constitutional violation. The duty to intervene is not optional, and it does not disappear because the victim is unpopular, impaired, accused of a crime, difficult to process, or already in custody. The law required the Present-Officer Defendants to stop the unconstitutional force. They chose not to.

**C. The Reporting Defendants then attempted to blame Mr. Nettles for the officers' own misconduct.**

29. After the use of force, Defendant Lassiter, Defendant Gardner, and/or the Reporting Defendants caused or allowed criminal paperwork to be generated accusing Mr. Nettles of Criminal Mischief 3rd. The criminal complaint alleged that, on or about June 29, 2025 at approximately 3:45 a.m., Mr. Nettles intentionally damaged property by breaking a computer monitor and desk chair, with damages not exceeding $500.00. That allegation was not a truthful account of what the objective video evidence shows.

30. The booking-room video does not show Mr. Nettles intentionally breaking a computer monitor and desk chair. It does not show him freely destroying jail property. It does not show him committing the criminal-mischief offense later placed into official paperwork. Instead, it shows Mr. Nettles fully handcuffed behind his back, surrounded, and physically controlled by officers in the booking area. It shows the Force Defendants moving, grabbing, holding, choking, lifting, and manhandling him near the workstation area. It shows the officers creating the physical chaos that the Reporting Defendants later attempted to attribute to Mr. Nettles.

31. The officer narrative does not cure the false criminal paperwork. It makes the problem worse. The criminal complaint alleges intentional damage to a computer monitor and desk chair. The officer narrative describes a computer tower and a monitor. Those are different alleged items and different factual assertions. The discrepancy is not a harmless wording issue. It goes to the core factual basis for the charge and reveals that the Reporting Defendants' story shifted when they attempted to justify what happened in the booking room.

32. The false criminal-mischief accusation served an obvious purpose. It allowed the Reporting Defendants to portray Mr. Nettles as the aggressor, to cast the officers as victims responding to dangerous conduct, and to create a paper justification for force that the video evidence did not support. It converted a fully handcuffed detainee's abuse into an officer-created

accusation. It attempted to make the man who was choked and assaulted appear responsible for the violence inflicted upon him.

33. The Reporting Defendants were not confused civilians trying to reconstruct an event from memory. They were the officers involved or the officers responsible for reporting, approving, adopting, or failing to correct the official account. They knew Mr. Nettles had been fully handcuffed behind his back. They knew he had been surrounded. They knew force had been applied to him. They knew what happened in the booking room. They knew or had access to the jail video. Yet they caused, allowed, approved, or failed to correct official paperwork that materially misrepresented what occurred.

34. The Reporting Defendants' conduct after the force was used is evidence of consciousness of wrongdoing. Rather than truthfully report that officers used force against a fully handcuffed detainee in a booking room, the Reporting Defendants generated or allowed a narrative that shifted blame onto Mr. Nettles. Rather than acknowledge that the video did not support an intentional-destruction allegation, the Reporting Defendants pursued or allowed criminal accusations that were contradicted by the objective evidence.

**D. The criminal paperwork and warrant timing raise serious questions about post-hoc justification.**

35. The criminal complaint against Mr. Nettles was electronically filed on or about June 30, 2025. The complaint alleged that Mr. Nettles committed Criminal Mischief 3rd on or about June 29, 2025 at approximately 3:45 a.m. The arrest warrant was likewise issued or electronically filed on or about June 30, 2025. However, the certificate of execution reflects that Mr. Nettles was arrested at approximately 4:13 a.m. on June 29, 2025 and placed in jail.

36.     The timing matters because it raises serious questions about whether the criminal-mischief paperwork was generated after the booking-room force incident to justify or cover up what occurred. Discovery will show who authored the narrative, who supplied facts for the complaint, who reviewed the video, who swore to or caused the complaint to be sworn, who approved the charge, who reviewed the warrant materials, and which Reporting Defendants failed to correct false or misleading allegations after the truth was known.

37.     Upon information and belief, Defendant Lassiter, Defendant Gardner, and/or one or more Reporting Defendants knowingly made, supplied, approved, adopted, ratified, or failed to correct false and materially misleading statements concerning Mr. Nettles. Upon information and belief, these Reporting Defendants omitted material facts from criminal paperwork, including that Mr. Nettles was fully handcuffed behind his back, subdued, surrounded by officers, subjected to force, and not shown by video intentionally breaking the property identified in the criminal complaint.

38.     Upon information and belief, had a neutral magistrate been provided a truthful and complete account of the booking-room video and the officers' conduct, criminal process would not have issued in the manner it did. The existence and disposition of all charges arising out of this incident, including the Criminal Mischief 3rd charge and any related assault allegation, will be confirmed through criminal court records and discovery.

      **E.     The Force Defendants, Reporting Defendants, and Supervisory Defendants failed to provide truthful documentation, preserve evidence, and secure medical care.**

39. After the use of force, the Force Defendants had a duty to stop using force once Mr. Nettles was fully handcuffed and under control; the Present-Officer Defendants had a duty to intervene; the Reporting Defendants had a duty to truthfully document what happened, preserve the video evidence, and identify the officers involved; and the Supervisory Defendants had a duty to ensure supervisory review and secure appropriate medical care. Those duties existed because Mr. Nettles had just been subjected to force inside a jail booking room while fully handcuffed with his hands behind his back and under officer control. No Defendant could lawfully treat the incident as routine, erase the context, omit the officers' conduct, or reduce the event to a false allegation that Mr. Nettles intentionally damaged property.

40. Upon information and belief, the Reporting Defendants failed to accurately document the force used against Mr. Nettles. They failed to truthfully describe the choking, lifting, grabbing, pulling, shoving, and manhandling captured on video. They failed to truthfully describe that Mr. Nettles was fully handcuffed with his hands behind his back. They failed to truthfully identify the extent to which officers' own movements and force caused or contributed to any disturbance near the workstation area. They failed to truthfully acknowledge that the video did not support the criminal-mischief allegation as charged.

41. Upon information and belief, the Force Defendants, Present-Officer Defendants, and Supervisory Defendants also failed to ensure that Mr. Nettles received appropriate medical evaluation and treatment following the force used against him. A detainee who has been choked, lifted while force is being applied to his neck or throat, and physically assaulted while fully handcuffed behind his back requires prompt medical assessment. The risk of injury from neck force is obvious. The need for evaluation is obvious. Ignoring that need was unreasonable,

deliberately indifferent, negligent, wanton, and part of the same pattern of treating Mr. Nettles as a problem to be controlled rather than a person whose constitutional rights had been violated.

**F.      This was not a mistake; it was a breakdown of basic constitutional policing.**

42.      The Constitution imposes basic limits on officers who hold a person in custody. Officers may restrain a detainee when necessary, but they may not punish him. They may use reasonable force when an actual threat requires it, but they may not choke a handcuffed man who has already been subdued. They may write reports, but they may not falsify or materially mislead. They may initiate criminal process when probable cause exists, but they may not manufacture probable cause by omitting their own misconduct and blaming the victim of their force.

43.      The Force Defendants used excessive force. The Present-Officer Defendants failed to intervene. The Reporting Defendants failed to truthfully report. Defendant Lassiter, Defendant Gardner, and/or other Reporting Defendants caused or allowed false and misleading criminal accusations. The Supervisory Defendants failed to provide or secure appropriate medical care, failed to correct the false record, and failed to impose adequate discipline. And they did all of this despite the existence of video evidence showing that Mr. Nettles was fully handcuffed with his hands behind his back, controlled, and not doing what the Reporting Defendants later accused him of doing.

44.      As a direct and proximate result of Defendants' conduct, Mr. Nettles suffered physical injuries, neck and throat pain, bodily pain, bruising, soreness, emotional distress, mental anguish, humiliation, fear, loss of liberty, reputational harm, lost income, expenses, and other damages that continue now and into the future. He also suffered the separate injury of being falsely portrayed as the aggressor after officers used unlawful force against him.

**COUNT ONE**
**EXCESSIVE FORCE**
**Under 42 U.S.C. § 1983**
**(Against the Force Defendants)**

45. The Plaintiff re-alleges and incorporates by reference paragraphs 18-44 above, with the same force and effect as if fully set out in specific detail herein.

46. At all times relevant to this Complaint, Mr. Nettles had a clearly established constitutional right to be free from excessive force. Whether analyzed under the Fourth Amendment, the Fourteenth Amendment, or both, the Force Defendants were prohibited from using objectively unreasonable, punitive, malicious, sadistic, or gratuitous force against a detainee who was fully handcuffed with his hands behind his back, subdued, surrounded, and under officer control.

47. The Force Defendants violated Mr. Nettles's clearly established rights by choking him, applying force to his neck and throat area, lifting him while force was being applied to his neck and throat, grabbing him, pulling him, shoving him, physically overpowering him, and otherwise assaulting him while he was fully handcuffed with his hands behind his back and under control. The force was not reasonably necessary to prevent escape, prevent harm, protect officers, protect detainees, or protect property. It was disproportionate to any legitimate need for force and was objectively unreasonable under the circumstances.

48. A reasonable officer in the Force Defendants' position would have known that choking and manhandling a detainee who was fully handcuffed with his hands behind his back inside a jail booking room violates the Constitution. A reasonable officer would have known that the use of force must stop once a detainee is handcuffed behind his back and under control. A reasonable officer would have known that pressure to the neck or throat of a handcuffed person creates an obvious and unacceptable risk of serious injury. A reasonable officer would have known

that the fact that a person is impaired, intoxicated, confused, verbally noncompliant, frightened, or difficult to process does not authorize gratuitous force.

49. The Force Defendants acted intentionally, knowingly, recklessly, maliciously, and with deliberate indifference to Mr. Nettles's constitutional rights. Their conduct was not a reasonable mistake. It was a misuse of governmental power against a fully handcuffed person who had no meaningful ability to protect himself.

50. As a direct and proximate result of the Force Defendants' conduct, Mr. Nettles suffered physical injuries, pain and suffering, neck and throat pain, bodily pain, emotional distress, mental anguish, humiliation, fear, loss of liberty, reputational harm, lost income, expenses, and other damages.

51. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, attorney's fees, costs, interest, and all other relief allowed by law.

**COUNT TWO**
**FAILURE TO INTERVENE**
**Under 42 U.S.C. § 1983**
**(Against the Present-Officer Defendants)**

52. The Plaintiff re-alleges and incorporates by reference paragraphs 18-44 above, with the same force and effect as if fully set out in specific detail herein.

53. At all times relevant to this Complaint, the Present-Officer Defendants had a clearly established duty to intervene when they observed another officer using excessive force. That duty applied with special force in the booking-room setting, where multiple officers were present, Mr. Nettles was fully handcuffed with his hands behind his back and surrounded, and the force unfolded in a manner that gave officers a realistic opportunity to stop it.

54. The Present-Officer Defendants personally observed the force used against Mr. Nettles. They knew or should have known that he was fully handcuffed behind his back, subdued,

17

outnumbered, and under control. They knew or should have known that applying force to his neck or throat, lifting him while he was being choked, and physically assaulting him under those circumstances was excessive and unlawful.

55. The Present-Officer Defendants had a realistic opportunity to intervene. They could have ordered the force to stop. They could have physically separated the offending Force Defendants from Mr. Nettles. They could have repositioned him safely. They could have used lawful restraint methods. They could have summoned a supervisor. They could have secured medical care. They could have refused to assist in the unlawful force. Instead, they failed to act, assisted in the force, held Mr. Nettles in place while force was applied, blocked his ability to protect himself, or otherwise enabled the constitutional violation.

56. The Present-Officer Defendants' failure to intervene was not passive or harmless. Their inaction allowed the excessive force to continue and increased the danger to Mr. Nettles. By failing to intervene, the Present-Officer Defendants became participants in the unlawful use of force.

57. As a direct and proximate result of the Present-Officer Defendants' failure to intervene, Mr. Nettles suffered physical injuries, pain and suffering, emotional distress, mental anguish, humiliation, fear, loss of liberty, reputational harm, lost income, expenses, and other damages.

58. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, attorney's fees, costs, interest, and all other relief allowed by law.

**COUNT THREE**
**FAILURE TO TRAIN AND SUPERVISE**
**Under 42 U.S.C. § 1983**
(Against Defendant Boatwright and John Doe Supervisors 1–10)

59. The Plaintiff re-alleges and incorporates by reference paragraphs 18-44 above, with the same force and effect as if fully set out in specific detail herein.

60. At all relevant times, Defendant Boatwright and John Doe Supervisors 1-10 were responsible for supervising, training, disciplining, commanding, and controlling deputies, correctional officers, jailers, booking officers, and other law-enforcement personnel under their authority. Their responsibilities included ensuring that officers did not use excessive force against fully handcuffed detainees, did not apply neck or throat force in unconstitutional circumstances, did not fail to intervene when other officers used excessive force, did not omit material facts from reports, did not falsify criminal accusations, preserved video evidence, and secured medical care following uses of force.

61. Defendant Boatwright and John Doe Supervisors 1-10 knew, should have known, or were deliberately indifferent to the obvious need for training and supervision on the constitutional limits governing force against detainees who are fully handcuffed with their hands behind their backs in a jail booking room. The need for such training and supervision is so obvious that failure to provide it creates a predictable risk of constitutional violations. No law-enforcement agency can constitutionally operate a jail booking area if officers believe they may choke, lift, manhandle, and assault fully handcuffed detainees and then write misleading paperwork blaming the detainee for the resulting incident.

62. Defendant Boatwright and John Doe Supervisors 1-10 further knew, should have known, or were deliberately indifferent to the need for policies, training, supervision, discipline, and corrective action regarding truthful reporting, preservation of evidence, review of jail video,

19

medical assessment after force, and the duty to intervene. Officers who use excessive force and then create false or misleading paperwork present a grave danger not only to the person injured but to the integrity of the entire criminal-justice process.

63. Upon information and belief, supervisory Defendants failed to implement, enforce, or ensure compliance with adequate policies governing booking-room force, neck restraints, use-of-force reporting, video review, preservation of evidence, intervention by bystander officers, medical care after force, and truthful criminal complaints. Upon information and belief, these failures were moving forces behind the violation of Mr. Nettles's constitutional rights.

64. Upon information and belief, the Supervisory Defendants knew of, ratified, approved, failed to correct, or deliberately ignored the unconstitutional conduct alleged herein after the fact. They knew or had access to the video. They knew or had access to the criminal paperwork. They knew or had access to the officer narrative. They knew or should have known that the video did not support the criminal-mischief allegation as charged. Yet they failed to correct the false record, failed to impose adequate discipline on the officers involved, failed to ensure medical care, and failed to take meaningful action to protect Mr. Nettles's rights.

65. The Supervisory Defendants' conduct was causally connected to the violation of Mr. Nettles's constitutional rights. Their failures allowed the Force Defendants to use force unlawfully, allowed the Present-Officer Defendants to fail to intervene, allowed the Reporting Defendants to misrepresent what occurred, and allowed the harm to continue through false and misleading criminal accusations.

66. As a direct and proximate result of the Supervisory Defendants' conduct, Mr. Nettles suffered physical injuries, pain and suffering, emotional distress, mental anguish, humiliation, fear, loss of liberty, reputational harm, lost income, expenses, and other damages.

67.     Plaintiff is entitled to compensatory damages, punitive damages against the individual supervisory Defendants, attorney's fees, costs, interest, and all other relief allowed by law.

**COUNT FOUR**
**MUNICIPAL LIABILITY / COUNTY-RESPONSIBLE JAIL FUNCTIONS**
**Under 42 U.S.C. § 1983**
**(Against Monroe County, Alabama, Pled in the Alternative and Limited to County-Responsible Functions)**

68.     The Plaintiff re-alleges and incorporates by reference paragraphs 18-44 above, with the same force and effect as if fully set out in specific detail herein.

69.     Plaintiff does not premise this Count on respondeat superior liability for the acts of the Sheriff, deputies, correctional officers, or jailers. Rather, Plaintiff pleads this Count against Monroe County only to the extent discovery establishes that Monroe County maintained or allowed a policy, custom, practice, funding decision, staffing decision, facility condition, video-system failure, evidence-preservation practice, medical-referral practice, inadequate discipline, or other county-responsible jail function that created an obvious risk that fully handcuffed detainees would be subjected to excessive force in the Monroe County Jail booking area or that such force would be concealed or misrepresented through official paperwork.

70.     Upon information and belief, Monroe County knew or should have known that failures in county-responsible jail operations, facility management, video systems, preservation practices, staffing, funding, discipline, and/or reporting procedures created a predictable risk that constitutional violations would occur and then be concealed or misrepresented through official paperwork.

71.     To the extent discovery establishes that Monroe County possessed and exercised authority over any such county-responsible function, Monroe County's deliberate indifference was a moving force behind the violation of Mr. Nettles's constitutional rights.

72.     As a direct and proximate result of Monroe County's county-responsible conduct, Mr. Nettles suffered physical injuries, pain and suffering, emotional distress, mental anguish, humiliation, fear, loss of liberty, reputational harm, lost income, expenses, and other damages.

73.     Plaintiff is entitled to compensatory damages, attorney's fees, costs, interest, and all other relief allowed by law.

**COUNT FIVE**
**ASSAULT**
**Under Alabama Law**
**(Against the Force Defendants)**

74.     The Plaintiff re-alleges and incorporates by reference paragraphs 18-44 above, with the same force and effect as if fully set out in specific detail herein.

75.     The Force Defendants intentionally engaged in conduct that placed Mr. Nettles in immediate apprehension of harmful and offensive contact, including by surrounding him, advancing on him, grabbing him, applying force to and around his neck and throat, lifting him, pulling him, shoving him, and physically overpowering him while he was fully handcuffed with his hands behind his back.

76.     The Force Defendants' conduct was not privileged, justified, or consented to. Their conduct would cause a reasonable person in Mr. Nettles's position to fear imminent harmful and offensive contact, especially because Mr. Nettles was fully handcuffed behind his back, outnumbered, and unable to protect himself.

77. As a direct and proximate result of the Force Defendants' assault, Mr. Nettles suffered physical injuries, pain and suffering, neck and throat pain, bodily pain, emotional distress, mental anguish, humiliation, fear, lost income, expenses, and other damages.

78. Plaintiff is entitled to compensatory damages, punitive damages, costs, interest, and all other relief allowed by law.

**COUNT SIX**
**BATTERY**
**Under Alabama Law**
**(Against the Force Defendants)**

79. The Plaintiff re-alleges and incorporates by reference paragraphs 18-44 above, with the same force and effect as if fully set out in specific detail herein.

80. The Force Defendants intentionally touched, grabbed, pulled, shoved, choked, lifted, struck, held, and physically assaulted Mr. Nettles. The touching was harmful, offensive, excessive, unreasonable, and unauthorized. Mr. Nettles did not consent to the force used against him, and the force exceeded any lawful privilege, authority, or justification the Force Defendants may claim.

81. The Force Defendants' conduct constituted battery under Alabama law. They acted willfully, maliciously, in bad faith, beyond their authority, and/or under a mistaken interpretation of the law. Their conduct was not a good-faith law-enforcement act. It was the unlawful physical abuse of a fully handcuffed detainee whose hands were behind his back.

82. As a direct and proximate result of the Force Defendants' battery, Mr. Nettles suffered physical injuries, pain and suffering, neck and throat pain, bodily pain, emotional distress, mental anguish, humiliation, fear, lost income, expenses, and other damages.

83. Plaintiff is entitled to compensatory damages, punitive damages, costs, interest, and all other relief allowed by law.

**COUNT SEVEN**
**NEGLIGENCE, WANTONNESS, AND WILLFUL MISCONDUCT**
**Under Alabama Law**
**(Against the Force Defendants, Present-Officer Defendants, Reporting Defendants, and Supervisory Defendants)**

84. The Plaintiff re-alleges and incorporates by reference paragraphs 18-44 above, with the same force and effect as if fully set out in specific detail herein.

85. The Force Defendants owed Mr. Nettles duties under Alabama law to use reasonable care, refrain from excessive force, refrain from choking or applying dangerous force to the neck or throat of a fully handcuffed detainee, refrain from assaulting and battering a fully handcuffed detainee, and refrain from using force beyond any lawful privilege or authority.

86. The Present-Officer Defendants owed Mr. Nettles duties under Alabama law to use reasonable care, intervene to prevent unlawful force, refrain from assisting unlawful force, refrain from holding him in place while unlawful force was applied, and secure appropriate medical care following force.

87. The Reporting Defendants owed Mr. Nettles duties under Alabama law to truthfully document use-of-force incidents, refrain from false or misleading criminal allegations, preserve evidence, and correct materially false paperwork once the truth was known or reasonably available.

88. The Supervisory Defendants owed Mr. Nettles duties under Alabama law to ensure reasonable supervision, reasonable discipline, truthful reporting, evidence preservation, appropriate use-of-force review, and appropriate medical care following force.

89. The Force Defendants breached their duties by choking, lifting, manhandling, assaulting, battering, and using gratuitous force against Mr. Nettles while he was fully handcuffed with his hands behind his back, subdued, and surrounded by officers. The Present-Officer Defendants breached their duties by failing to intervene and by allowing or assisting the force to

continue. The Reporting Defendants breached their duties by failing to truthfully document the incident and by failing to correct false and misleading paperwork. The Supervisory Defendants breached their duties by failing to ensure medical care, failing to impose adequate discipline, and failing to prevent continued harm to Mr. Nettles.

90. These Defendants acted negligently, wantonly, willfully, maliciously, in bad faith, beyond their authority, and/or under a mistaken interpretation of the law. They knew or should have known that their conduct created a substantial likelihood of injury to Mr. Nettles. They knew or should have known that choking and lifting a detainee who was fully handcuffed with his hands behind his back created a risk of serious harm. They knew or should have known that false and misleading paperwork would cause additional harm.

91. As a direct and proximate result of these Defendants' negligence, wantonness, and willful misconduct, Mr. Nettles suffered physical injuries, pain and suffering, emotional distress, mental anguish, humiliation, fear, loss of liberty, reputational harm, lost income, expenses, and other damages.

92. Plaintiff is entitled to compensatory damages, punitive damages, costs, interest, and all other relief allowed by law.

**COUNT EIGHT**
**TORT OF OUTRAGE**
**Under Alabama Law**
**(Against the Force Defendants and Reporting Defendants)**

93. The Plaintiff re-alleges and incorporates by reference paragraphs 18-44 above, with the same force and effect as if fully set out in specific detail herein.

94. The Force Defendants and Reporting Defendants acted intentionally or recklessly. The Force Defendants choked, lifted, manhandled, and physically assaulted Mr. Nettles while he was fully handcuffed with his hands behind his back, surrounded, and unable to protect himself.

25

The Reporting Defendants then attempted to shift blame to Mr. Nettles through false, incomplete, and materially misleading criminal paperwork that accused him of conduct the video evidence does not show.

95. This conduct was extreme and outrageous. It went beyond the bounds of decency for government officers to physically abuse a fully handcuffed detainee in a jail booking room, apply force to his neck and throat, lift him while he was being choked, and then portray him as the wrongdoer through false or materially misleading paperwork. Such conduct is atrocious and utterly intolerable in a civilized society.

96. The Force Defendants' and Reporting Defendants' conduct caused Mr. Nettles severe emotional distress, including humiliation, fear, mental anguish, anxiety, loss of dignity, and continuing emotional harm. No reasonable person should be expected to endure being choked and assaulted while fully handcuffed behind his back and then falsely portrayed as the aggressor by the officers involved.

97. As a direct and proximate result of the Force Defendants' and Reporting Defendants' tortious conduct, Mr. Nettles suffered physical injuries, emotional distress, mental anguish, humiliation, fear, loss of liberty, reputational harm, lost income, expenses, and other damages.

98. Plaintiff is entitled to compensatory damages, punitive damages, costs, interest, and all other relief allowed by law.

**COUNT NINE**
**NEGLIGENT AND/OR WANTON HIRING, TRAINING, SUPERVISION, RETENTION, AND DISCIPLINE**
**Under Alabama Law**
**(Against Defendant Boatwright, John Doe Supervisors 1-10, and, to the extent legally responsible, Monroe County)**

99. The Plaintiff re-alleges and incorporates by reference paragraphs 18-44 above, with the same force and effect as if fully set out in specific detail herein.

100. Plaintiff pleads this Count against the hiring, training, supervision, retention, and discipline Defendants to the extent discovery establishes that any such Defendant had the requisite employer, master, supervisory, hiring, training, retention, or disciplinary authority over the Force Defendants, Present-Officer Defendants, and/or Reporting Defendants, and to the extent such claim is permitted by Alabama law.

101. Upon information and belief, the hiring, training, supervision, retention, and discipline Defendants knew or should have known that one or more Force Defendants, Present-Officer Defendants, and/or Reporting Defendants were incompetent, unfit, insufficiently trained, inadequately supervised, inadequately disciplined, or otherwise likely to misuse force, fail to intervene, fail to truthfully report force, or misuse criminal paperwork to justify officer misconduct.

102. Upon information and belief, the hiring, training, supervision, retention, and discipline Defendants failed to use reasonable care in hiring, training, supervising, retaining, and disciplining the officers involved in this incident. Those failures included inadequate training on force against fully handcuffed detainees, inadequate training on neck and throat force, inadequate training on the duty to intervene, inadequate supervision of booking-room use-of-force incidents, inadequate discipline for excessive force or false reporting, and inadequate systems to ensure truthful reporting and medical assessment following force.

103. The officers' underlying tortious conduct, including assault, battery, negligence, wantonness, willful misconduct, outrage, and invasion of privacy, was a foreseeable and proximate result of those hiring, training, supervision, retention, and discipline failures.

104. As a direct and proximate result of the negligent and/or wanton hiring, training, supervision, retention, and discipline alleged herein, Mr. Nettles suffered physical injuries, pain and suffering, emotional distress, mental anguish, humiliation, fear, loss of liberty, reputational harm, lost income, expenses, and other damages.

105. Plaintiff is entitled to compensatory damages, punitive damages, costs, interest, and all other relief allowed by law.

**COUNT TEN**
**INVASION OF PRIVACY - WRONGFUL INTRUSION INTO PHYSICAL SANCTUM**
**Under Alabama Law**
**(Against the Force Defendants)**

106. The Plaintiff re-alleges and incorporates by reference paragraphs 18-44 above, with the same force and effect as if fully set out in specific detail herein.

107. Alabama law recognizes a claim for invasion of privacy where a defendant wrongfully intrudes upon another person's solitude, seclusion, private affairs, or physical sanctum in a manner that would be offensive or objectionable to a reasonable person. Plaintiff pleads this claim in the alternative and based on the Force Defendants' wrongful physical intrusion upon Mr. Nettles's bodily privacy and physical sanctum.

108. The Force Defendants intentionally invaded Mr. Nettles's physical sanctum by grabbing, choking, lifting, holding, pulling, shoving, and physically overpowering his body while he was fully handcuffed with his hands behind his back, surrounded by officers, unable to leave, and unable to protect himself. The Force Defendants' physical invasion was not consensual, not justified by any legitimate need for force, and not reasonably necessary to accomplish any lawful purpose.

109. The intrusion was highly offensive and objectionable to a reasonable person. A detainee does not surrender the right to bodily privacy and physical dignity because he is in a jail

booking room. Officers may lawfully restrain a detainee when necessary, but they may not invade his physical sanctum through gratuitous choking, lifting, and manhandling after he is fully handcuffed behind his back and under control.

110. As a direct and proximate result of the Force Defendants' wrongful intrusion, Mr. Nettles suffered physical injuries, pain and suffering, emotional distress, humiliation, fear, mental anguish, loss of dignity, and other damages.

111. Plaintiff is entitled to compensatory damages, punitive damages, costs, interest, and all other relief allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff respectfully prays that this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1. Issue an Order requiring Defendants to make Plaintiff whole by awarding nominal damages, compensatory damages and punitive damages.

2. Awarding punitive damages against each Defendant as allowed by law.

3. Award litigation costs and expenses, including reasonable attorneys' fees under 42 U.S.C. § 1988 and other applicable law;

4. Such other and further relief as the Court may deem just and proper.

5. Award all damages available under Alabama law for assault, battery, negligence, wantonness, willful misconduct, outrage, negligent/wanton hiring, training, supervision, retention, discipline, and invasion of privacy;

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

Respectfully submitted,

*/s/ Nicki L. Lawsen*
Sidney M. Jackson
Samuel Fisher

Nicki L. Lawsen
**WIGGINS, CHILDS, PANTAZIS, FISHER &
  GOLDFARB, LLC**
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
sjackson@wigginschilds.com
sf@wigginschilds.com
nlawsen@wigginschilds.com